1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRZYSZTOF SYWULA, | Case No. 21-cv-01456-BAS-AGS |
| Plaintiff, | **ORDER:** |
| v. | **(1) GRANTING MOTION TO REMAND (ECF No. 11); AND** |
| ALEXIS DACOSTA, et al., | |
| Defendants. | **(2) TERMINATING AS MOOT MOTION TO CHANGE VENUE (ECF No. 8)** |

## I.      Introduction

This case is one of three actions stemming from a business venture to develop a software application for aggregating ride-sharing services.  The first two cases started in federal court, but this one started in state court.  Two Defendants removed the action based on federal jurisdiction, alleging one of Plaintiff Krzysztof Sywula's seventeen state law claims presents a federal issue.   Sywula, however, filed an amended complaint transforming that claim.  Sywula now challenges removal and also asks the Court to send the case back to state court in light of his amended pleading.

The Court considers a sequence of procedural issues to resolve Sywula's motion. First, was removal proper?  Second, if so, does original jurisdiction still exist after Sywula

filed an amended complaint?  Finally, if removal was proper but there is no longer original jurisdiction, should the Court decline to exercise supplemental jurisdiction over the remaining state law claims and remand them?

The Court finds removal was proper because federal patent law completely preempted one of Sywula's claims.  Yet, original jurisdiction no longer exists after Sywula eliminated the federal issue.  Defendants may have a preemption defense to one or more of Sywula's remaining state law claims, but a federal defense to Sywula's claims does not create original jurisdiction.  And because the basis for original jurisdiction has been eliminated long before trial, the Court declines to exercise supplemental jurisdiction over Sywula's state law claims.  Hence, the Court grants the motion to remand and terminates as moot Defendants' request to change venue.

## II.   Background[1]

### A.   The Software Venture

Sywula is a software developer.  (First Am. Compl. ("FAC") ¶ 15, ECF No. 10.)  In April 2016, Defendant Alexis DaCosta and another individual contacted Sywula to pitch a business venture.  (*Id.* ¶ 16.)  They hoped to develop a mobile software application that aggregates ride-sharing services like popular services do for airfare and hotel offerings.  (*Id.* ¶¶ 15–16.)  Over the next year and a half, Sywula "fully designed and built the software, related source code, and interfaces."  (*Id.* ¶¶ 17–19.)  He also wrote twenty-five domestic and international patent applications based on the application's design, architecture, and algorithms.  (*Id.* ¶ 20.)

Sywula and DaCosta later formed Defendant Teleport Mobility, Inc. to own and develop the mobile application and related intellectual property.  (FAC ¶ 22.)  Sywula became Chief Technology Officer and owns a large minority stake in Teleport.  (*Id.*)  DaCosta is a director on Teleport's board.  (*Id.* ¶ 23.)  The remaining individual defendants

---

[1] Except where noted, this background is taken from Sywula's allegations.  And the Court assumes his factual allegations are true to resolve the jurisdictional issues.  *See, e.g.*, *HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*, 600 F.3d 1347, 1350 (Fed. Cir. 2010).

have positions of authority at Teleport.  (*Id.* ¶¶ 5–7, 23.)  The venture also formed a related entity—Defendant Northern Lights, LLC.  (*See id.* ¶¶ 4, 32, 37.)

### B.    The Invention Agreement

As Teleport's CTO, Sywula was "primarily responsible for the creation, development, building, and implementation (and continuation of the same) of the software, source code, algorithms, architecture and related technologies and functionality for the ride-sharing application, including the related patents."  (FAC ¶ 24.)  As part of his employment, Sywula entered into Teleport's Employee Proprietary Information and Inventions Agreement ("Invention Agreement").  (*Id.* ¶ 25, Ex. A.)  He did so "[i]n consideration of . . . the compensation now and hereafter paid to [him]" from Teleport. (*Id.*)

Teleport's Invention Agreement covers "Inventions," which are broadly defined to include trade secrets, discoveries, designs, software, and other items.  (Invention Agreement § 1.2.)  Then, in a nutshell, the Invention Agreement: (1) excludes from its scope "Inventions . . . patented or unpatented, which [Sywula] made prior to the commencement of [his] employment with [Teleport]"; and (2) requires Sywula to assign to Teleport future Inventions "made or conceived or reduced to practice or learned by [him], either alone or jointly with others, during the period of [his] employment with [Teleport]," with limited exceptions.  (*Id.* §§ 2.2–2.3.)  Sywula did not list any past Inventions that should be excluded from the Invention Agreement.  (Invention Agreement Ex. B.)  So, Sywula promised to assign practically everything he developed with Teleport to the entity.  (*See* Invention Agreement § 2.3; FAC ¶ 20.)

### C.    The Multi-Action Dispute

As its CTO, Sywula "performed extensive work for Teleport, including thousands of hours of labor."  (FAC ¶ 26.)  However, Teleport allegedly has not "paid Plaintiff any compensation or wages for the work Plaintiff did while employed by Teleport and at the direction of Teleport."  (*Id.*)  Sywula thus claims Defendants have not met their obligations under the Invention Agreement.  (*Id.*)  He also claims Defendants have not reimbursed him

- 3 -

for business expenses he incurred, including patent attorney fees and U.S. Patent and Trademark Office expenses. (*Id.*)

Moreover, despite Sywula performing all the brainwork, DaCosta allegedly insists that he—not Sywula—is the inventor of Teleport's patents. (FAC ¶ 27.) Sywula has tried unsuccessfully to correct this inventorship issue, including by requesting that he be added to the relevant patent filings. (*Id.* ¶¶ 27–30.) Ultimately, "Sywula resigned his position as a Teleport employee." (*Id.* ¶ 31.)

The parties' contentious relationship has since further devolved. (*See* FAC ¶ 32.) Sywula claims, among other things, that Defendants "have refused to return or allow Plaintiff to access his personal property, which includes: 38 bottles of wine, office furniture (including chairs and desk), computer equipment, computer hardware, a television, and table tennis equipment." (*Id.*)  Defendants also allegedly hired an investigator who trespassed into private areas of Sywula's property and marked his cars. (*Id.*)  And their dispute has further sprawled into three lawsuits.[2]

### 1.    Northern District Action

Teleport and Northern Lights sued Sywula in the Northern District of California, alleging he breached several agreements and misappropriated the entities' intellectual property. *Teleport Mobility Inc. v. Sywula*, 21-cv-00874-SI (N.D. Cal. filed Feb. 3, 2021). Judge Susan Illston entered a preliminary injunction that, among other things, enjoined Sywula from deleting or limiting access to the companies' files and networks and required the parties to preserve certain evidence. *Id.*, ECF No. 30. Sywula then successfully moved to compel arbitration of the Northern District Action. *Id.*, ECF No. 49. In June 2021, Judge Illston left the injunction in place and stayed the case pending arbitration. *Id.*

---

[2] This case has not been consolidated with the parties' related lawsuits, and the pleadings in this action are dispositive of the parties' motions. The Court summarizes the related cases because they provide context for the parties' arguments, particularly those concerning whether the Court should decline supplemental jurisdiction. *See infra* Part III.B.2.

### 2.    Inventorship Action

After the Northern District Action proceeded to arbitration, Sywula filed a new federal case raising a claim for correction of patent inventorship under 35 U.S.C. § 256. *Sywula v. DaCosta*, 21-cv-01450-BAS-AGS (S.D. Cal. filed Aug. 15, 2021).   The Inventorship Action seeks an order requiring the USPTO to add Sywula as a coinventor to several patents issued to Teleport.

Sywula moved in the Inventorship Action for a temporary restraining order that prevented Teleport from transferring the patents pending resolution of the inventorship issues, which this Court denied.   Inventorship Action, ECF No. 27.   The Court then also denied Sywula's request for a preliminary injunction.   *Id.*, ECF No. 35.   In considering whether Sywula showed a likelihood of success on his inventorship claim, the Court noted that Sywula had assigned away his rights to the patents.   *Id.*   And although he claimed those assignments should be undone, the Court reasoned that Sywula would first have to attempt to invalidate the assignments under state law before he would have standing to bring an inventorship claim based on a financial interest in the patents.[3]   *Id.*

### 3.    This Action

Around the same time he filed the Inventorship Action, Sywula filed this action in San Diego County Superior Court.   (Compl., Notice of Removal Ex. A, ECF No. 1-2.)   His initial Complaint raised seventeen claims, including for breach of the Inventorship Agreement, rescission of the Inventorship Agreement, conversion, failure to pay wages, and declaratory relief.   (*Id.* ¶¶ 36–139.)   The gist of Sywula's claims is that Defendants have wrongly tried "to run him out of the Teleport business and deny him the benefits of the invention that he created and rightfully owns."   (*Id.* 2:9–11.)   Among other things, Sywula asks for a determination that the Invention Agreement "is rescinded and that

---

[3]   *See Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1326 (Fed. Cir. 2009) (explaining the plaintiff lacked "constitutional standing to sue for correction of inventorship in federal court" where his financial stake in the patents was "contingent upon him obtaining relief that a federal court has no jurisdiction under § 1338 to provide"—namely, the voiding of assignments governed by state law).

Plaintiff had and has no obligations under the [agreement] at any time including presently and moving forward." (*Id.* 39:17–19.)

Defendants Teleport and Northern Lights removed this case, alleging a federal issue exists because Sywula's initial declaratory relief claim concerned inventorship of patents. (Notice of Removal 2:15–20.) Sywula filed a First Amended Complaint that overhauls the declaratory relief claim to expressly seek relief based on recission of the Inventorship Agreement—a matter governed by state law. (FAC ¶¶ 117–119.) Shortly after this amendment, Sywula moved to remand this case. (Mot. to Remand, ECF No. 11.) Defendants Teleport and Northern Lights oppose. (Opp'n, ECF No. 15.) Defendants also moved to transfer venue to the Northern District of California.[4] (ECF No. 8.)

## III.   Analysis

### A.   Removal Jurisdiction

The Court assesses its jurisdiction before considering Defendants' request to change venue. *E.g.*, *Bookout v. Beck*, 354 F.2d 823, 825 (9th Cir. 1965). Sywula challenges removal, arguing his initial Complaint did not raise a federal issue. (Mot. to Remand 10:3–16:8.) He also argues removal was improper because not all Defendants joined in the Notice of Removal. (*Id.* 6:18–7:2.)

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Removal is appropriate only if the court has original jurisdiction over the state court action. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1061 (9th Cir. 2021).

"A motion to remand is the proper procedure for challenging removal." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing 28 U.S.C. § 1447(c)). The propriety of removal turns on whether the case could have originally been

---

[4] The Court finds these motions suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L. R. 7.1(d)(1).

filed in federal court.  *Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997).  The court "must look to the complaint as of the time the removal petition was filed."  *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979).  Hence, although Sywula filed a First Amended Complaint, the Court considers the initial Complaint to determine whether jurisdiction existed at the time of removal.

### 1.   Patent Jurisdiction

The Notice of Removal cites both the general federal question jurisdiction statute—28 U.S.C. § 1331—and the patent jurisdiction statute—28 U.S.C. § 1338—as grounds for removal.  (*See* Notice 2:15–20, 3:13–15.)  Section 1338 is the one that matters here.  It provides: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . . No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents."  28 U.S.C. § 1338(a).

The milestone case interpreting § 1338 is *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988).  There, the Supreme Court construed the "arising under" language in § 1338(a) to be the same as the "arising under" language in the general federal question statute.  *Id.* at 808.  That means the familiar "well-pleaded complaint rule" applies to § 1338.  *Id.* at 809.

Under that rule, "as appropriately adapted to § 1338(a), whether a claim 'arises under' patent law 'must be determined from what necessarily appears in the plaintiff's statement of his own claim.'"  *Christianson*, 486 U.S. at 809 (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Calif.*, 463 U.S. 1, 10 (1983)).  "Thus, a case raising a federal patent-law defense does not, for that reason alone, 'arise under' patent law, 'even if the defense is anticipated in the plaintiff's complaint.'"  *Id.* (quoting *Franchise Tax Board*, 463 U.S. at 14).  Jurisdiction under § 1338(a) thus extends only to those cases where a well-pleaded complaint establishes either "federal patent law creates the cause of action" or "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law."  *Id.*  at 808–09.

- 7 -

The Notice of Removal points to Sywula's fifteenth claim for declaratory relief. (Notice 2:18–20.) Although since changed in the First Amended Complaint, this claim alleged "an actual controversy exists as to who is the inventor of the Teleport/Northern Lights intellectual property, including but not limited to [certain] Patent Application Serial Numbers." (Compl. ¶ 121.) Sywula asked the Court to declare him "the sole inventor of the Teleport/Northern Lights intellectual property, including but not limited to [certain] Patent Application Serial Numbers." (*Id.* ¶ 122.)

Sywula's original claim arose under 28 U.S.C. § 1338(a). Inventorship "is a unique question of patent law." *HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*, 600 F.3d 1347, 1353 (Fed. Cir. 2010). A different state standard for inventorship "might frustrate the dual federal objectives of rewarding inventors and supplying uniform national patent law standards." *Univ. of Colo Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999). So, federal patent law completely preempts "any state law that purports to define rights based on inventorship." *Id*. And Sywula's declaratory relief claim arose under § 1338(a). *See HIF Bio*, 600 F.3d at 1353 (holding the district court wrongly remanded state law claim seeking "a declaratory judgment that [the plaintiffs] "were and are the first and true inventors/discoverers" of an invention); *see also Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1325 (Fed. Cir. 2009) ("We have treated requests for declaratory relief relating to inventorship as functional equivalents of actions formally brought pursuant to [35 U.S.C.] § 256.").

Hence, because Sywula's Complaint included a claim arising under 28 U.S.C. § 1338(a), this Court had original jurisdiction over the action. *See Christianson*, 486 U.S. at 808–09. Teleport and Northern Lights properly invoked 28 U.S.C. § 1441(a) to remove the case.

## 2. Joinder in Notice of Removal

Beyond contesting jurisdiction, Sywula raises a procedural objection to Defendants' removal. He argues removal was improper because the remaining Defendants did not join in the Notice of Removal. (Mot. to Remand 6:18–7:2.) "All defendants who have been

'properly . . . served in the action' must join a petition for removal." *Destfino v. Reiswig*, 630 F.3d 952, 956 (9th Cir. 2011) (quoting *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988)). "If this is not true when the notice of removal is filed, the district court may allow the removing defendants to cure the defect by obtaining joinder of all defendants prior to the entry of judgment." *Id.*

Defendants Teleport and Northern Lights submit that none of the Defendants had been served when the case was removed by Teleport and Northern Lights; meaning, the consent of the other Defendants was unnecessary. (Opp'n 10:8–10; *see also* Williams Decl. ¶ 5, Ex. 1 (showing that individual Defendants were purportedly served on August 17, 2021, one day after the Notice of Removal was filed).) Defendants also seek to cure any potential defect, submitting that all Defendants who have been served "join in and consent to removal." (Williams Decl. ¶ 6.) Sywula replies that a declaration by counsel is not enough—the remaining Defendants need to file a joinder on the docket. (Reply 2:16–3:3.)

Sywula's procedural objection is not persuasive. Although some circuits "have adopted the more demanding requirement that each co-defendant must submit a timely, written notice of consent to joinder," that is not the rule in the Ninth Circuit. *Proctor v. Vishay Intertech. Inc.*, 584 F.3d 1208, 1224 (9th Cir. 2009). An averment in the notice of removal signed by an attorney of record is sufficient in light of Federal Rule of Civil Procedure 11. *Id.* at 1225. If less than all defendants join in removal, that averment should explain the absence of consent from the remaining defendants. *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1266 (9th Cir. 1999), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006). The Notice of Removal includes such an averment here; it explains that the other Defendants had not yet been served. (Notice of Removal 2:21–26.) Therefore, the Notice of Removal is not defective.

Moreover, the removal statute's consent requirement applies to defendants who are served before removal, not after. *See* 28 U.S.C. § 1446(b)(2)(A); *see also, e.g.*, *Packard*

*v. Temenos Advisory, Inc.*, 159 F. Supp. 3d 1344, 1353 (S.D. Ga. 2016) ("The rule addresses neither procedure nor service on a defendant after removal, as these matters are instead covered in 28 U.S.C. §§ 1447 and 1448, respectively."); *see also A.E. v. Ashford Gateway TRS Corp. Grp., Inc.*, No. 1:18-cv-1459 (AJT/JFA), 2018 WL 11224373, at *2 (E.D. Va. Dec. 20, 2018) ("Courts have uniformly rejected Plaintiff's position that defendants served after removal must nevertheless consent to that removal."). The later-served Defendants have the right to contest removal, but there is no statutory requirement that they file a consent to removal here. *See* 28 U.S.C. § 1448; *see also* Charles Alan Wright et al., 14C Fed. Prac. & Proc. Juris. § 3730 (Rev. 4th ed. 2021) (collecting cases on consenting to removal).

In sum, the Court is unpersuaded by Sywula's jurisdictional and procedural challenges to removal.

## B.    Supplemental Jurisdiction

Because the Court has original jurisdiction over Sywula's Complaint, the supplemental jurisdiction statute applies. Supplemental jurisdiction "applies with equal force to cases removed to federal court as to cases initially filed there." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997). The court has supplemental jurisdiction over state law claims that are part of the same case or controversy. 28 U.S.C. § 1367(a). "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (quoting *Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003)).

The Court finds Sywula's attendant state law claims meet the supplemental jurisdiction standard; the parties' business relationship and the ensuing fallout lies at the heart of Sywula's various claims. (*See* Compl. ¶¶ 15–35.) Therefore, it would be proper to exercise supplemental jurisdiction over these claims, but the filing of a First Amended Complaint complicates the Court's inquiry.

### 1.   Elimination of Original Jurisdiction

Sywula contends that even if his Complaint provided original jurisdiction, the First Amended Complaint does not, and the Court should decline to exercise supplemental jurisdiction over the amended pleading's state law claims.  (Mot. to Remand 16:9–20:4.)  Defendants argue Sywula cannot defeat jurisdiction through a "sham amendment" to his pleadings and contend his case still "sounds in federal law."  (Opp'n 18:4–19:15.)

The law is on Sywula's side.  A plaintiff can make the tactical decision to abandon a federal claim after removal.  For example, in *Baddie v. Berkeley Farms, Inc.*, 64 F.3d 487, 489 (9th Cir. 1995), the plaintiffs amended their employment action to avoid federal jurisdiction after it was removed.  The district court was concerned the plaintiffs were manipulating the forum's jurisdiction.  It reasoned that if the plaintiffs "wished to avoid federal court, they should have dropped their federal claims before ever filing a complaint." *Id.* at 491.

The Ninth Circuit was unconvinced.  Considering the plaintiffs "dismissed their federal claims and moved for remand with all due speed after removal," the Court of Appeals explained there "was nothing manipulative about that straight-forward tactical decision, and there would be little to be gained in judicial economy by forcing plaintiffs to abandon their federal causes of action before filing in state court." *Baddie*, 64 F.3d at 489; *see also, e.g.*, *Millar v. Bay Area Rapid Transit Dist.*, 236 F. Supp. 2d 1110, 1121 (N.D. Cal. 2002) (noting that *Baddie* considered a timely dismissal of federal claims and that a motion for remand decreased the concern of "improper forum manipulation"); *accord Franklin v. Ford Motor Co.*, No. CV 16-5854-MWF (JPR), 2016 WL 7117239, at *3 (C.D. Cal. Dec. 6, 2016) (declining supplemental jurisdiction and remanding after amendment eliminated original jurisdiction); *Kisaka v. Univ. of S. Cal. USC*, No. CV 17-01746-BRO (MRWx), 2017 WL 1960636, at *4 (C.D. Cal. May 11, 2017) (same).

The same reasoning applies here.  Nothing prevented Sywula from amending his Complaint in response to the Notice of Removal, particularly where he may have not intended to bring a federal claim in state court to begin with.  And he did so quickly after

removal.  *See Baddie*, 64 F.3d at 489.  The Court, then, considers whether his amendment eliminates original jurisdiction.

The rules outlined above similarly determine whether the First Amended Complaint arises under federal law.  To recap, patent jurisdiction extends only to those cases where a well-pleaded complaint establishes either "federal patent law creates the cause of action" or "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law."  *Christianson*, 486 U.S. at 808–09.

The Court's removal analysis above hinged on Sywula's declaratory relief inventorship claim, but the First Amended Complaint transforms that claim.  (*See* FAC ¶ 117–19.)  Instead of seeking a determination of inventorship—a federal issue—Sywula asks the Court to determine an issue of state contract law—whether the Invention Agreement should be rescinded in light of Defendants' failure to pay him.  (*Id.* ¶ 119.)  In other words, Sywula invokes state law to undo the agreement's broad assignment of intellectual property to Teleport.  *See supra* Part II.B.

This change is consequential.  "[Q]uestions of patent ownership are determined by state law."  *E.g.*, *Larson*, 569 F.3d at 1327; *see also Prize*, 167 F.3d at 1264 ("Claims concerning patent ownership do not create federal jurisdiction.").  Indeed, state law determines whether the Invention Agreement should be undone for failure of consideration.  *See HIF Bio*, 600 F.3d at 1355 (explaining that "patent law is not essential" to resolve a "cause[] of action for declaration of ownership").  It follows that this claim does not arise under federal law.  *See Christianson*, 486 U.S. at 808–09.  Hence, the First Amended Complaint eliminates the Court's basis for original jurisdiction described above.  Defendants offer a few fallback arguments, however, which the Court must address to ensure it lacks original jurisdiction.

### i.   Federal Issue in Conversion Claim

<u>Patent Law</u>.  Seeking to avoid remand, Defendants argue another claim—Sywula's state law claim for conversion—sounds in federal patent law and is preempted.  (Opp'n 13:6–16:21; 19:19–15.)  There are a few challenges with this argument.  First, a federal

preemption defense to a conversion claim is not enough to create original jurisdiction.  *See Christianson*, 486 U.S. at 809 (explaining "a case raising a federal patent-law defense does not, for that reason alone, 'arise under' patent law, 'even if the defense is anticipated in the plaintiff's complaint'" (quoting *Franchise Tax Board*, 463 U.S. at 14)).  Second, Sywula's conversion claim is based on both tangible and intangible property and raises alternative theories for recovery.

The Federal Circuit's decision in *HIF Bio, Inc. v. Yung Shin Pharmaceuticals Industrial Co.*, 600 F.3d 1347 (Fed. Cir. 2010), illustrates why the conversion claim does not provide original jurisdiction.  There, the plaintiffs filed suit in California state court, and the defendant removed the action.  *Id.* at 1351.  The plaintiffs then amended their complaint, and the defendant moved to dismiss.  *Id.* The district court granted the motion, dismissed a federal racketeering claim, and remanded the remaining causes of action.  *Id.* The Federal Circuit had to determine whether the district court properly declined supplemental jurisdiction over those remanded claims.  *Id.* at 1351–52.

Like here, one of the state law causes of action sought a declaratory judgment of inventorship.  *HIF Bio*, 600 F.3d at 1352.  Applying *Christianson*, 486 U.S. 800, the Federal Circuit reasoned that this claim arose under federal law, so the district court erred in concluding the claim could be remanded.  *Id.* at 1352–53.  Although that analysis guides this Court's removal determination above, the Federal Circuit's consideration of the plaintiffs' remaining claims is what dooms Teleport and Northern Light's conversion argument.

Because the *HIF Bio* plaintiffs' remaining state law claims were "not direct creatures of patent law," the Federal Circuit explained that the district court had original jurisdiction "only if plaintiffs' 'right to relief necessarily depends on the resolution of a substantial question of federal patent law, in that patent law is a necessary element of the well-pleaded claims.'"  600 F.3d at 1354 (quoting *Christianson*, 486 U.S. at 808–09).  Akin to Defendants' arguments here, the *HIF Bio* defendant argued patent law "was necessary to resolve the remaining causes of action," including a California state law claim for

- 13 -

conversion. *Id.* at 1354.  The Federal Circuit disagreed. *Id.*  "[A] claim arises under the patent laws only if the inventorship [or other patent] issue is essential to the resolution of the claim." *See id.*  "Moreover, the appearance of 'an alternative, non-patent theory' which may entitle the plaintiffs to their requested relief compels the conclusion that the cause of action does not arise under the patent laws." *Id.* (quoting *Christianson*, 486 U.S. at 813).

The Federal Circuit then used the conversion claim as an example of why the state law claims did not create original jurisdiction. *HIF Bio*, 600 F.3d at 1355–56.  "Because plaintiffs could establish conversion by reference to the defendants' alleged misappropriation of 'experiments, pre-publication experimental data, and nonpublic, pre-publication drafts of papers,' an alternative, non-patent theory exists which entitles plaintiffs to relief." *Id.*  Hence, the cause of action did "not arise under § 1338(a)." *Id.* at 1356.

The same reasoning applies to Sywula's conversion claim.  He alleges ownership of certain property, including "wine, office furniture, computer equipment/hardware, and table tennis equipment," as well as "rights regarding the intellectual property and subject of the patents."  (FAC ¶ 58.)  Sywula further alleges Defendants substantially interfered with his property and ownership rights, including by refusing to return the property and by not allowing him access to where the property is located in Sunnyvale, California.  (*Id.* ¶ 59.)

Federal law does not completely preempt this claim.  To start, patent law is irrelevant to the alleged conversion of Sywula's personal property like office furniture and computer equipment.  And the alleged wrongful taking of "designs, [] diagrams, and blueprints" or other items that Sywula created provides "an alternative, non-patent theory" that could entitle him to relief.  (*See* FAC ¶¶ 18–21, 58–59.)  *See HIF Bio*, 600 F.3d at 1355.  Indeed, the broad definitions of "Inventions" and "Proprietary Rights" in the Invention Agreement cover far more than patents, so patents are not the only "intellectual property" potentially at issue.  (*See* Invention Agreement § 1.2.)  *Cf. Am. Tel. & Tel. Co. v. Integrated Network Corp.*, 972 F.2d 1321, 1325 (Fed. Cir. 1992) (explaining that patent law was not necessary

- 14 -

to resolve state law claim just because the state court might have "to look for guidance to the law on the conception of inventions"). So, although Defendants may have a preemption defense to part of this conversion claim, the claim does not provide original jurisdiction. *See HIF Bio*, 600 F.3d at 1355; *cf. Mannsfeld v. Evonik Degussa Corp.*, No. CIV.A. 10-0553-WS-M, 2011 WL 53098, at *9 (S.D. Ala. Jan. 5, 2011) (reasoning "that while defendants' objections to plaintiff's claims as seeking 'patent-like protection' may (or may not) be meritorious affirmative defenses on a 'conflict preemption' theory, they do not automatically transform plaintiff's nonfederal causes of action into federal claims on a 'field preemption' theory that would support removal jurisdiction").

Copyright Law. Switching gears, Defendants also argue that federal copyright law preempts the state law conversion claim. (Opp'n 15:1–16:21.) The jurisdictional statute for copyright and patent actions is the same. 28 U.S.C. § 1338. Hence, the well-pleaded complaint rule again applies. *Scholastic Entm't v. Fox Entm't Group, Inc.*, 336 F.3d 982, 986 (9th Cir. 2003); *Segundo Suenos, LLC v. Jones*, 494 F. App'x 732, 734 (9th Cir. 2012). And questions regarding copyright ownership are likewise governed by state law. *Scholastic*, 336 F.3d at 983, 986–88.

Defendants cite to several Ninth Circuit decisions to support their copyright argument, but these cases all concern copyright preemption as a defense, not as a source of original jurisdiction.[5] "In general, there are three forms of preemption: express preemption, conflict preemption, and field preemption." *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1068 (9th Cir. 2018) (citing *Arizona v. United States*, 567 U.S. 387, 398–400 (2012)). "Congress has not preempted the field in copyright law." *Id.* (citing *Foad Consulting*

---

[5] *See generally Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1008–09, 1010–16 (9th Cir. 2017) (analyzing copyright preemption defense raised as part of motion under California's anti-SLAPP statute); *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1150–54 (9th Cir. 2008) (considering whether court properly dismissed state law claims under Rule 12(b)(6) as preempted by copyright law); *L. v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1145 (9th Cir. 2006) (concluding Congress expressly preempted a misappropriation claim through 17 U.S.C. § 301); *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089–90 (9th Cir. 2005) (analyzing the same); *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1439–42 (9th Cir. 1993) (applying conflict preemption test to state law unfair competition claim).

21cv1456

*Grp., Inc. v. Musil Govan Azzalino*, 270 F.3d 821, 827 (9th Cir. 2001)); *accord Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 760 (9th Cir. 2015).

Hence, Defendants' copyright contention goes to whether they have a preemption defense to Sywula's conversion claim, not whether this Court has original jurisdiction over any state law claims. *See Close*, 894 F. 3d at 1068; *see also Segundo*, 494 F. App'x at 735 (explaining that even though an alleged copyright assignment "must comply with the requirement of a writing pursuant to federal copyright law, *see* 17 U.S.C. § 204(a), the pleading of that defense, even if pleaded in the complaint as an anticipated defense, cannot subvert the well-pleaded complaint rule and generate federal question jurisdiction"). The Court is therefore unconvinced that original jurisdiction exists under 28 U.S.C. § 1338 on a copyright law basis.

### ii. Independent Basis for Jurisdiction

Switching lanes, Defendants argue there is an independent basis to keep this case: diversity jurisdiction. (Opp'n 22:11–24:4.) Defendants are correct that if there is an independent basis for jurisdiction beyond those ruled out above, this Court lacks discretion to decline supplemental jurisdiction and remand Sywula's state law claims. *See, e.g.*, *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 977 (9th Cir. 2006).

Defendants did not invoke diversity jurisdiction when removing the case. After all, they would have had to contend with the defendant-forum rule, a procedural rule that "confines removal on the basis of diversity jurisdiction to instances where no defendant is a citizen of the forum state." *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 939 (9th Cir. 2006) (citing 28 U.S.C. § 1441(b)). But once a case is properly removed, "[a]ny post-removal pleadings must be treated just as they would be in a case originally filed in federal court." *Id.* at 977. Thus, regardless of whether the case could have been removed under diversity jurisdiction, the Court must consider whether the First Amended Complaint now provides that basis for jurisdiction. *See id.*

Under 28 U.S.C. § 1332(a), the court has original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of

interests and costs, and certain citizenship requirements are met.  Defendants are citizens of California, Nevada, and Delaware.  (FAC ¶¶ 2–7.)  Defendants argue Sywula is a citizen of Poland and currently domiciled there, so there is complete diversity of citizenship. (Opp'n 23:3–10.)

Sywula's foreign citizenship implicates 28 U.S.C. § 1332(a)(2).  This subsection extends diversity jurisdiction to actions between citizens of a state and citizens or subjects of a foreign state, unless the citizen or subject of the foreign state is a lawful permanent resident in the United States who is domiciled in the same state as the opposing party.  *Id.* § 1332(a)(2); *see La. Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1056 (9th Cir. 2016) (applying § 1332(a)(2)); *Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1137 (9th Cir. 2011) (noting § 1332(a)(2) applied where only a plaintiff British Virgin Islands citizen and a defendant California citizen remained as parties).

"At minimum, a person's residence constitutes *some* evidence of domicile."  *Adams v. W. Marine Prod., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020).  And "a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change."  *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013).

Because Defendants want this case to remain in federal court, they have the burden of proving citizenship.  They do not meet this burden.  In response to Defendants' citizenship claim, Sywula submits that he is a lawful permanent resident who is domiciled in California.  (Reply 8:16–9:19; *see also* Sywula Decl. ¶ 5, Ex. C (including lawful permanent resident card).)  Although Sywula returned to Poland for several months in 2021, he lived in California when this lawsuit was filed and lives in California now.  (*Id.* ¶¶ 2–3.)  He attaches his residential lease agreement.  (*Id.* ¶ 3, Ex. D.)  Sywula also notes his children are enrolled in a California school, and he has worked for a California-based employer since August 2017.  (*Id.* ¶¶ 5–6.)  Hence, California is his established domicile, and a return to Poland for several months in 2021 is not enough to show he is no longer

domiciled in the state, particularly in light of his return to California and physical presence here. *Cf. Lew v. Moss*, 797 F.2d 747, 751–52 (9th Cir. 1986). And, regardless, the burden is on Defendants, not Sywula, to demonstrate the needed citizenship for diversity jurisdiction. The Court thus finds Defendants do not show diversity jurisdiction exists.

Simply put, even though the Court had original jurisdiction at the time of removal, the Court discerns no basis for original jurisdiction over the First Amended Complaint, which prompts the Court's discretion under the supplemental jurisdiction statute, 28 U.S.C. § 1367(c)(3).

### 2. Discretion to Decline Jurisdiction

The Court reaches the ultimate issue: whether it should decline supplemental jurisdiction over the remaining state law claims. A district court may decline supplemental jurisdiction over state law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). This provision applies where an amended pleading voluntarily eliminates the federal question. *See Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087, 1091 (9th Cir. 2008) (citing 28 U.S.C. § 1367(c)(3) ("Because the Amended Complaint did not present a federal question, the district court had the discretion to decline supplemental jurisdiction.").

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under" the supplemental jurisdiction inquiry—"judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Defendants argue remand is not appropriate because declining jurisdiction "would immeasurably harm Defendants and reward Sywula's multi-district, multi-jurisdiction, multi-forum litigation strategy. Teleport and Northern Lights would be facing two federal

- 18 -

lawsuits, one state court lawsuit, and a JAMS arbitration, all of which put at issue the same transactions, the same claims, and the same parties." (Opp'n 24:5–9.)   The Court appreciates Defendants' position but is unpersuaded for several reasons.   For one, Defendants, not Sywula, filed the Northern District Action.   That case is stayed pending arbitration, and Judge Illston denied Defendants' request to lift the stay based on Sywula filing this action and the Inventorship Action.   Northern District Action, ECF No. 56. Hence, one of the "two federal lawsuits" Defendants would be facing is in stasis.   Two, as this Court has expressed, the Inventorship Action faces significant hurdles to get out of the gate.   Inventorship Action, ECF No. 35.   So, pragmatically speaking, Defendants are likely to be significantly involved in two actions—the Northern District Action's arbitration and this related state court action.

Third, if Defendants end up litigating in different forums against Sywula, they are not left without a remedy.   California courts are no stranger to requests for relief based on related federal litigation.   "It is black letter law that, when a Federal action has been filed covering the same subject matter as is involved in a California action, the California court has the discretion but not the obligation to stay the state court action." *Caiafa Prof. L. Corp. v. State Farm Fire & Cas. Co.*, 15 Cal. App. 4th 800, 804 (1993).   So, too, are California courts equipped to consider Defendants' argument that Sywula's First Amended Complaint only raises claims that were compulsory counterclaims in the Northern District Action. *See, e.g.*, *Align Tech., Inc. v. Tran*, 179 Cal. App. 4th 949, 962 (2009) (applying California's "compulsory cross-complaint statute and federal cases interpreting the analogous Rule 13(a)"); *see also Currie Med. Specialties, Inc. v. Bowen*, 136 Cal. App. 3d 774, 777 (1982) (holding a prior "federal action was the proper time and place" for the plaintiff's claim).[6]

---

[6] As Judge Illston observed, however, "the Court compelled arbitration and stayed [the Northern District Action] before [Sywula] could file an answer or counterclaim."  Northern District Action, ECF No. 56.

Finally, despite the prospect of more than one pending related action, the Court finds the balance of factors point toward declining jurisdiction.  No case has been consolidated. And the related federal actions are either stayed or at the motion to dismiss phase.  Further, no court has invested significant resources into adjudicating Sywula's grab bag of state law claims raised here.  *See Millar*, 236 F. Supp. 2d at 1119 (reasoning remand appropriate where court "has expended only modest effort in supervising this case"); *cf. Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1089 n.4 (9th Cir. 2000) (reasoning it was not an abuse of discretion to retain jurisdiction over state claims where court had granted summary judgment over other claims and "was fully familiar with the record").

The comity factor likewise favors remand.  Considering the First Amended Complaint does not arise under federal law, a state court should decide the lynchpin issue— whether the Invention Agreement should be undone—along with all the other state law questions raised under the California Labor Code, California Corporations Code, California Business and Professions Code, and state common law.  *See Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *see also, e.g.*, *Daghlawi v. Juilin Hung*, No. CV-19-05824-PHX-DWL, 2020 WL 224362, at *1 (D. Ariz. Jan. 15, 2020) (reasoning comity favored remand of remaining state claims where plaintiff dismissed federal claim after removal).

Thus, although the Court has considered Defendants' arguments, the Court exercises its discretion to decline supplemental jurisdiction over the First Amended Complaint and remands Sywula's remaining claims.

## IV.    Conclusion

In light of the foregoing, the Court **GRANTS** Sywula's Motion to Remand (ECF No. 11).  The Court finds there was original jurisdiction at the time of removal, but original jurisdiction no longer exists.  Further, the Court exercises its discretion to decline supplemental jurisdiction over Sywula's remaining state law claims in the First Amended Complaint.  Hence, the Court **REMANDS** this action to the San Diego County Superior

Court.   Further, considering the Court's supplemental jurisdiction ruling, the Court **TERMINATES AS MOOT** Defendants' motion to change venue (ECF No. 8).

     **IT IS SO ORDERED.**

**DATED: March 29, 2022**

Hon. Cynthia Bashant
United States District Judge

21cv1456